# UNITED STATES COURT OF INTERNATIONAL TRADE

## BEFORE: THE HONORABLE TIMOTHY M. REIF, JUDGE

| | |
|---|---|
| AL GHURAIR IRON & STEEL LLC,<br><br>*Plaintiff,*<br><br>v.<br><br>UNITED STATES,<br>         *Defendant*<br><br>and<br><br>UNITED STATES STEEL CORPORATION, NUCOR CORPORATION, and STEEL DYNAMICS, INC.<br><br>*Defendant-Intervenors* | PUBLIC DOCUMENT<br><br>Court No. 20-00142 |

## STEEL DYNAMICS, INC.'S RESPONSE BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR JUDGMENT ON THE AGENCY RECORD

 

Roger B. Schagrin
Luke A. Meisner
Benjamin J. Bay
SCHAGRIN ASSOCIATES
900 Seventh Street, N.W.
Suite 500
Washington, D.C.  20001

*Counsel for Steel Dynamics, Inc.*

Dated: April 28, 2021

**TABLE OF CONTENTS**

RULE 56.2 STATEMENT ................................................................................................... 1

STATEMENT OF THE FACTS ......................................................................................... 3

STANDARD OF REVIEW .................................................................................................. 3

ARGUMENT ......................................................................................................................... 4

    I.    Commerce Properly Concluded That AGIS's Level Of Investment And Production Process Were Minor And Not Contrary To Law ............................. 4

    II.   Commerce's Use Of Surrogate Values Is Not Contrary To Law ....................... 9

    III.  Commerce's Evaluation Of Patterns Of Trade Were Based On Time Periods Selected In Accordance With Law ................................................................. 11

    CONCLUSION .................................................................................................... 13

# **TABLE OF AUTHORITIES**

**Cases**

*Consolidated Edison Co. v. NLRB*, 305 U.S. 197 (1938) .................................................................. 3

*Matsushita Elec. Indus. Co. v. United States*, 750 F.2d 927 (Fed. Cir. 1984) ............................... 3

*Suramerica de Aleaciones Laminadas, C.A. v. United States*, 44 F.3d 978 (Fed. Cir. 1994) ........................................................................................................................................... 3

*U.K. Carbon and Graphite Co., Ltd. v. United States*, 931 F. Supp. 2d 1322 (Ct. Int'l Trade 2013) .................................................................................................................. 9, 10

**Statutes**

19 U.S.C. § 1517(a)(5) ................................................................................................................... 6

19 U.S.C. § 1677(18)(A) ................................................................................................................ 9

19 U.S.C. § 1677j ........................................................................................................................... 9

19 U.S.C. § 1677j(b) ...................................................................................................................... 6

19 U.S.C. § 1677j(b)(1) ................................................................................................................. 5

19 U.S.C. § 1677j(b)(1)(D) ............................................................................................................ 9

19 U.S.C. § 1677j(b)(2) ................................................................................................................. 5

19 U.S.C. § 1677j(b)(2)(A) ........................................................................................................ 4, 7

19 U.S.C. § 1677j(b)(2)(C) ............................................................................................................ 7

19 U.S.C. § 1677j(b)(2)(D) ............................................................................................................ 7

19 U.S.C. § 1677j(b)(3) ................................................................................................................. 5

19 U.S.C. § 1677j(b)(3)(A) ............................................................................................................ 5

19 U.S.C. § 1677j(b)(3)(C) ............................................................................................................ 5

**Other Authorities**

*Certain Cold-Rolled Steel Flat Products From the People's Republic of China: Affirmative Final Determination of Circumvention of the Antidumping Duty and Countervailing Duty Orders*, 83 Fed. Reg. 23,891, (Dep't Commerce May 23, 2018) and accompanying Issues and Decision Memorandum ............................................................ 10

Omnibus Trade Act of 1987, S. Rep. No. 100-71 (1987) .............................................................. 8

UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE TIMOTHY M. REIF, JUDGE

| | |
|---|---|
| AL GHURAIR IRON & STEEL LLC,<br><br>    *Plaintiff*,<br><br>    v.<br><br>UNITED STATES,<br>    *Defendant*<br><br>    and<br><br>UNITED STATES STEEL CORPORATION, NUCOR CORPORATION, and STEEL DYNAMICS, INC.<br><br>    *Defendant-Intervenors* | PUBLIC DOCUMENT<br><br>Court No. 20-00142 |

**STEEL DYNAMICS, INC.'S RESPONSE BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR JUDGMENT ON THE AGENCY RECORD**

  Pursuant to USCIT Rule 56.2 and the Court's November 20, 2020 scheduling order (as amended on April 9, 2021), Defendant-Intervenor Steel Dynamics, Inc. ("SDI") submits the following response in opposition to the motion for judgment on the agency record filed by Plaintiff Al Ghurair Iron & Steel LLC ("AGIS") in the above-captioned action.

**RULE 56.2 STATEMENT**

A. The administrative determination under review is the Department of Commerce's ("Commerce") final results in the circumvention inquiry published as *Certain Corrosion-Resistant Steel Products from China: Affirmative Final Determination of Circumvention Involving the United Arab Emirates*, 85 Fed. Reg. 41,957 (Dep't Commerce July 13, 2020)

1

("*Final Determination*") (AD P.R. 150, CVD P.R. 142)[1] and accompanying Issues and Decision Memorandum ("IDM") (AD P.R. 148, CVD P.R. 141). The period examined in this circumvention inquiry was July 1, 2015 to July 31, 2019.

B. Issues Presented:

1. *Was Commerce's determination that the level of investment and production process for the assembly or completion of corrosion-resistant steel ("CORE") in the United Arab Emirates ("UAE") are minor supported by substantial evidence and in accordance with law?*

   <u>Defendant-Intervenor SDI's Position</u>: Yes; Commerce's determination that AGIS's assembly or completion of CORE in the UAE is minor or insignificant is supported by substantial evidence and not contrary to law. Specifically, despite Plaintiff's arguments, neither the circumvention statute, nor Commerce's prior practice, establish that the timing of the establishment of production facilities in the third country, whether a third country facility was established with the intent to circumvent an order, nor whether a third country facility would be considered significant on its own, are dispositive to Commerce's circumvention inquiry.

2. *Was Commerce's use of surrogate values from Malaysia to value the Chinese origin hot-rolled steel ("HRS") and cold-rolled steel ("CRS") substrate used by AGIS to produce finished CORE supported by substantial evidence and in accordance with law?*

   <u>Defendant-Intervenor SDI's Position</u>: Yes; Commerce's use of surrogate values is supported by substantial evidence and is not contrary to law. In fact, Commerce's use of surrogate values is supported by precedent from this Court.

---

[1] Citations to documents on the public administrative record are denoted as "P.R." in this brief. In line with the citation convention set out in Defendant's response brief, citations to the antidumping duty public record denoted as "AD P.R." and citations for the countervailing duty circumvention inquiry denoted at "CVD P.R." This brief contains no confidential information subject to the judicial protective order.

2

3. *Was Commerce's determination that the pattern of trade regarding CORE produced in the UAE from Chinese origin HRS and CRS substrate supports a finding of circumvention supported by substantial evidence and in accordance with law?*

<u>Defendant-Intervenor SDI's Position</u>: Yes; Commerce's selection of time periods to compare and consequent finding that the patterns of trade regarding CORE supported an affirmative circumvention determination were based on substantial evidence and in accordance with law.

## STATEMENT OF THE FACTS

Defendant-Intervenor SDI agrees with the statement of the facts as presented in Defendant's response brief (ECF 43 at 3-11).

## STANDARD OF REVIEW

The applicable standard of review is set forth in 19 U.S.C. § 1516a(b)(1)(B)(i). Pursuant to the statute, the Court holds unlawful any determination found to be unsupported by substantial evidence on the record, or otherwise not in accordance with law. Substantial evidence means "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Suramerica de Aleaciones Laminadas, C.A. v. United States*, 44 F.3d 978, 985 (Fed. Cir. 1994) (*quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). In evaluating Commerce's determination, the Court must decide whether "the administrative record contain{s} substantial evidence to support" Commerce's decision and whether that decision was "rational." *Matsushita Elec. Indus. Co. v. United States*, 750 F.2d 927, 933 (Fed. Cir. 1984). Defendant-Intervenor SDI agrees with the detailed discussion of the standard of review and the legal framework regarding circumvention inquiries under 19 U.S.C. § 1677j set out in Defendant's response brief. *See* ECF 43 at 12-17.

3

# ARGUMENT

## I. Commerce Properly Concluded That AGIS's Level Of Investment And Production Process Were Minor And Not Contrary To Law

Plaintiff asserts that the statute and the record evidence cannot support an affirmative determination of circumvention when any of the following factual scenarios are present: 1) a production facility in a third country is established prior to Commerce's initial investigation regarding the subject merchandise; 2) Commerce cannot show that the production facility in the third country was created with the express intention of circumventing or evading the order; or 3) the level of investment or production processes in the third country production facility could be considered significant on its own. ECF 34 at 20-26. Plaintiff is attempting to create "get out of jail free" cards in circumvention inquiries for downstream steel producers in third countries based on non-existent statutory requirements. Contrary to Plaintiff's assertions, such restrictions on Commerce's inquiry are not found in the statute, nor are have they been established by Commerce's prior practice. As such, this Court should reject Plaintiff's arguments.

The statute sets out five factors for Commerce to evaluate to determine whether the process of assembly or completion in a third country is minor or insignificant, one of which is "the level of investment in the foreign country." 19 U.S.C. § 1677j(b)(2)(A). Plaintiff challenges Commerce's ability to determine that the level of investment for the completion of CORE in the UAE is minor when compared to the level of investment in China, stating that AGIS's UAE operations were established prior to Commerce's investigations on CORE produced in China. ECF 34 at 22-23. In the Plaintiff's view, Commerce's ability to compare investment in the UAE to investment in China is predicated on the UAE facility beginning operations after the initiation of the original investigation.

However, as pointed out in Defendant's response brief, Plaintiff is attempting to bind Commerce to a requirement that is not found anywhere in the statute, nor has Plaintiff pointed to any Congressional intent to create such a requirement. ECF 43 at 24. Moreover, furthering the point made by Defendant, the statute does not apply any temporal boundaries on Commerce's evaluation on the investment or facilities that assemble or complete the merchandise in the third country under 19 U.S.C. § 1677j(b)(1), 19 U.S.C. § 1677j(b)(2), or 19 U.S.C. § 1677j(b)(3). In fact, the only statutory directives requiring Commerce to make an evaluation through a temporal prism are found in 19 U.S.C. § 1677j(b)(3), setting out the other factors Commerce must take into account when making a circumvention finding. The first and third of these factors focus on the timing of the flow of merchandise used to produce the final product and the final product itself. 19 U.S.C. § 1677j(b)(3)(A) and 19 U.S.C. § 1677j(b)(3)(C). There is no such reference to the time when a respondent's operations were first established. *Id*. The fact that Congress directed Commerce to consider timing when examining patterns of trade and any increase in imports, but not when evaluating the significance of investment and processing in the third country, further supports Commerce's determination that no such temporal analysis is required with respect to the latter considerations.

Given that Plaintiff has failed to identify any statutory authority requiring Commerce to assess the time when its operations were established, let alone set out that establishment prior to the time of the original investigation is dispositive to Commerce's inquiry, this Court should reject Plaintiff's argument that, by not doing so, Commerce's decision was not based on substantial evidence. To do otherwise would invite evasion through third countries that already have infrastructure in place. Indeed, evasion is even easier when such facilities already exist, as the amount of time needed to begin circumvention operations is shorter when evaders do not

have to build a new facility. Accepting AGIS's argument would only incentivize circumvention through such facilities, as the circumvention statute would no longer be able to reach them.

Plaintiff further argues that there is no evidence that AGIS's CORE facility was created in response to the imposition of the order on CORE from China. ECF 34 at 23. As stated by the Defendant in its response brief, the statute does not require Commerce to find an intent to evade as a prerequisite to a finding circumvention. ECF 43 (*citing* IDM at 13-14 and 19 U.S.C. § 1677j(b)(1)(E)). Instead, Commerce only has to determine that action is appropriate to prevent evasion. *Id*.

Moreover, nowhere does the statute indicate that "evasion" must be intentional, or further that a respondent in the third country has the "intent" to evade duties. In fact, imposing an element of intent into the term "evasion" would run contrary to Congress's understanding of that term in its recent enactment of the Enforce and Protect Act ("EAPA"), signed into law as part of the Trade Facilitation and Trade Enforcement Act of 2015. Specifically, Congress defined the term "evasion" in 19 U.S.C. § 1517(a)(5) as:

> entering covered merchandise into the customs territory of the United States by means of any document or electronically transmitted data or information, written or oral statement, or act that is material and false, or any omission that is material, and that results in any cash deposit or other security or any amount of applicable antidumping or countervailing duties being reduced or not being applied with respect to the merchandise.

In other words, the term "evasion" as used by Congress does not require an intent element on the part of an importer or exporter, it simply requires that the conduct has occurred. Thus, reading an intent requirement into 19 U.S.C. § 1677j(b) where none explicitly exists would run counter to the term's meaning throughout the entire statutory scheme.

6

Finally, Plaintiff contends that AGIS's production facilities for CORE in the UAE are significant on their own, and therefore that Commerce must determine that the level of investment is substantial. ECF 34 at 20. Specifically, Plaintiff contends that since the statute does not instruct Commerce to base its evaluation of the significance of investment and processing under 19 U.S.C. § 1677j(b)(2)(A), (C), or (D) on a "relative comparison," Commerce must look at "the extent of AGIS's production facilities on their own." ECF 34 at 24 (emphasis omitted). However, Defendant-Intervenor SDI agrees with Defendant that the statute does not set out a specific methodology for Commerce to follow with regard to this evaluation, therefore, Commerce has discretion in its analysis. In this case, Commerce has adopted a reasonable approach by "comparing the total investment required from the beginning of the production process in the country subject to an order (here, China), to the total investment required to perform the finishing steps in the third country (here, the UAE)." ECF 43 at 18-19.

Plaintiff's contention is an attempt to prevent any affirmative circumvention determination based only on the nature of the product reviewed. In other words, Plaintiff argues that any steel product should be free of scrutiny regardless of any other facts supporting a circumvention finding, merely because the investment required to establish finishing operations in a third country would be considered expensive in isolation. In essence, Plaintiff is still advocating for Commerce to continue to compare the level of investment for the CORE facilities in UAE with another investments, but, unlike Commerce's chosen comparison with the value of investment made to produce the substrate for CORE in the country subject to the original order, Plaintiff seeks to replace the comparison with Chinese HRS and CRS producers with a comparison to straw man products from a completely different investigation and industry, such as tissue paper. ECF 34 at 21-22 (*citing Certain Tissue Paper Products From the People's*

7

*Republic of China: Affirmative Preliminary Determination of Circumvention of the Antidumping Duty Order*, 78 Fed. Reg. 14,514 (Dep't Commerce March 6, 2013) and accompanying Issues and Decision Memorandum).

Nothing in the statute, nor in the legislative history, puts an absolute cap on the level of third-country investment, over which evasion is permitted. Applying such an exclusionary rule – when Congress has made no such exclusion – would not only undermine the circumvention statute, but go against the original Congressional intent underlying the circumvention statute. Congress intended to provide Commerce with the discretion to adapt to "different cases {that} present different factual situations" by avoiding bright-line rules, as Congress "expects the Commerce Department to use this authority to the fullest extent possible to combat diversion and circumvention." Omnibus Trade Act of 1987, S. Rep. No. 100-71, (1987) at 100-101.

As stated by Defendant in its response brief, "a particular company's investment is relevant in the analysis only insofar as that investment is compared to the entirety of the production process for CORE." ECF 43 at 21. Without a reference point to the level of investment required to produce CORE from its primary inputs (*i.e.,* the level of investment of integrated Chinese CORE producers), Commerce would have no context to evaluate whether the level of investment required to turn HRS and CRS into CORE (*i.e.,* the level of investment of UAE CORE producers) is minor. In such a vacuum, a requirement placing a hard, arbitrary cap on the value of investment, without context to truly evaluate the difference between a further processing facility and a facility that produces the substrate used in that further processing facility, would give certain industries a license to circumvent. This Court should reject Plaintiff's attempt to give itself such a license.

## II.     Commerce's Use Of Surrogate Values Is Not Contrary To Law

Plaintiff argues that it is unlawful for Commerce to use surrogate values for the Chinese origin HRS and CRS substrate used by AGIS to complete the production of CORE in the UAE. ECF 34 at 31-34. However, as noted in Defendant's response brief (*see* ECF 43 at 37-40), Commerce is required to determine whether "the value of the merchandise produced in the foreign country to which the antidumping duty order applies is a significant portion of the total value of the merchandise exported to the United States." 19 U.S.C. § 1677j(b)(1)(D). Moreover, 19 U.S.C. § 1677j "does not define 'value' and the statute is otherwise silent as to any particular method Commerce must use in assessing 'value,'" therefore Congress has given Commerce discretion to develop its own methodology. ECF 43 at 37.

In this case, the "foreign country to which the antidumping duty order applies" is China, a non-market economy ("NME"). An NME does not operate on market principles of cost or pricing structures, and sales in NME countries do not reflect the fair value of the merchandise. 19 U.S.C. § 1677(18)(A). Therefore, as the analysis Commerce was required to perform in this inquiry under 19 U.S.C. § 1677j(b)(1)(D) is directly related to value of the HRS and CRS input from China, it was appropriate for Commerce to value the Chinese origin inputs under the Department's NME methodology. ECF 43 at 37-40 (citing IDM at 21 and *Certain Corrosion-Resistant Steel Products From the People's Republic of China: Affirmative Preliminary Determination of Circumvention Involving the United Arab Emirates*, 85 Fed. Reg. 8,841 (Dep't Commerce Feb. 18, 2020) (AD P.R. 153, CVD P.R. 114), and accompanying Preliminary Decision Memorandum ("PDM") (AD P.R. 121, CVD P.R. 113) at 4-5, 8-9, 22-23).

In fact, Commerce did so as this "Court has previously sustained Commerce's use of surrogate values in circumvention inquiries because it reflects Commerce's reasonable

9

construction of the statute." ECF 43 at 37 (citing *U.K. Carbon and Graphite Co., Ltd. v. United States*, 931 F. Supp. 2d 1322, 1336 (Ct. Int'l Trade 2013) ("*U.K. Carbon*")).

Despite *U.K. Graphite's* ruling on this issue, Plaintiff attempts to re-frame this decision as supporting its position. ECF 34 at 33. However, Plaintiff's reliance and reasoning is unfounded, as Plaintiff fails to recognize that the underlying circumvention inquiry in *U.K. Graphite* involved circumvention of an order on Chinese-made carbon and graphite rods by taking Chinese-made unfinished inputs and finishing those inputs in the United Kingdom into the merchandise subsequently exported to the United States. *U.K. Graphite*, 931 F.Supp.2d at 1336. The United Kingdom, like the UAE, is a market economy. The fact that a market economy producer was the purchaser of the Chinese-origin inputs did not cure the inherent unreliability of the Chinese NME prices for that input. Ultimately, the Court found Commerce's use of its surrogate value methodology to value the Chinese-produced substrate to be "a reasonable construction of the statute," regardless of the purchaser of the Chinese-produced input's market economy status. *Id*.

Therefore, despite Plaintiff's contention, the fact that HRS and CRS from China were purchased by AGIS does not cure the unreliability of the value of substrate from an NME. Instead, UAE's status as a market economy means only that Commerce should not use surrogate values to value the further processing performed in the UAE. *C.f.*, *Certain Cold-Rolled Steel Flat Products From the People's Republic of China: Affirmative Final Determination of Circumvention of the Antidumping Duty and Countervailing Duty Orders*, 83 Fed. Reg. 23,891 (Dep't Commerce May 23, 2018) and accompanying Issues and Decision Memorandum at 3 ("{t}hese are anti-circumvention proceedings pertain to the CRS Orders on China, which are NME proceedings, concerning further-processing of substrate from China, an NME country,

performed in Vietnam, also an NME country… {t}hus, the application of Commerce's NME methodology is appropriate to analyze both the HRS input costs and the processing costs in Vietnam."). If Commerce had used surrogate values in place of the data regarding the value added by further processing in the UAE, that would have been a different matter. However, that is not the case here. Since Commerce only applied the NME methodology to the inputs from the NME (namely, China) in this NME circumvention inquiry, Commerce's action, in line with this Court's finding in *U.K. Graphite*, is in accordance with the law and reflects a reasonable construction of the statute. Commerce's use of surrogate values should therefore be upheld.

### III. Commerce's Evaluation Of Patterns Of Trade Were Based On Time Periods Selected In Accordance With Law

Plaintiff claims that Commerce "cherry-picked particular periods that supported its decision and ignored important aspects of AGIS's patterns of trade." ECF 34 at 34. However, as set out in Defendant's response brief, Commerce selected base and comparison periods at the beginning of this inquiry that are, respectively, before and after the month of initiation of the original investigation. ECF 43 at 41 (citing IDM at 8, 12-13; PDM at 23-24). Commerce also, despite originally conducting its inquiry on a country-wide basis, ultimately analyzed the patterns of trade on both country-wide and AGIS-specific bases, finding that both analyses weighed in favor of an affirmative circumvention determination. ECF 43 at 41 (citing IDM at 8-15 and PDM at 23-24). Although Plaintiff acknowledges that the statute does not set out a particular time period Commerce must review that conflicts with the periods examined in this inquiry (ECF at 34), Plaintiff maintains that Commerce, after collecting data covering the entire 98-month period, must pick and choose data from certain time periods, based on instructions from Plaintiff, to complete its analysis.

11

Plaintiff is ultimately arguing that Commerce did not cherry-pick a subset of data from the total data collected, then use that subset of data to reach a different determination in this inquiry for Plaintiff's benefit. This Court should reject such a contention. Commerce, despite the fact that this inquiry was initially on a country-wide basis, still evaluated AGIS-specific data with regards to this issue in its final determination. ECF 43 at 41-42. The simple fact that Plaintiff did not ultimately agree with the data used does not mean that Commerce's actions were unreasonable or contrary to law. Plaintiff does not have the right to dictate the time period that Commerce reviews. Defendant's response brief explains that Commerce has the discretion to choose to compare a time period before initiation with the time period after initiation required by the statute, and to select the time periods for examination in accordance with logical reasoning and prior practice. ECF 43 at 41-44. As such, this Court should reject Plaintiff's argument, and hold that Commerce's consideration of patterns of trade are backed by substantial evidence and in accordance with the law.

## CONCLUSION

For the reasons in this and Defendant's brief, (*see* ECF 43 at 17-37), this Court should reject Plaintiff's challenge to a reasonable Commerce determination and uphold Commerce's *Final Results* as supported by substantial evidence and in accordance with law. Defendant-Intervenor SDI, therefore, respectfully requests that Plaintiff's motion for judgment on the agency record be denied.

Respectfully submitted,

/s/ *Benjamin J. Bay*
Roger B. Schagrin
Luke A. Meisner
Benjamin J. Bay
SCHAGRIN ASSOCIATES
900 Seventh Street, N.W.
Suite 500
Washington, D.C. 20001

*Counsel for Steel Dynamics, Inc.*

Dated: April 28, 2021

**CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing response brief complies with the word-count limitation in this Court's Order of November 20, 2020 (ECF 31), limiting this brief to 10,000 words. This response brief contains 4,025 words according to the word count function of the word processing software used to prepare the brief.

Dated: April 28, 2021                                   /s/ *Benjamin J. Bay*
                                                        Benjamin J. Bay

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| AL GHURAIR IRON & STEEL LLC,<br><br>   *Plaintiff,*<br><br>   v.<br><br>UNITED STATES,<br>   *Defendant*<br><br>   and<br><br>UNITED STATES STEEL CORPORATION, NUCOR CORPORATION, and STEEL DYNAMICS, INC.<br><br>   *Defendant-Intervenors* | Court No. 20-00142 |

### PROPOSED ORDER

Upon consideration of the motion for judgment on the administrative record filed by plaintiff, the responses thereto filed by the defendant and the defendant-intervenors, plaintiff's reply, the administrative record, and all other papers and proceedings herein, it is hereby:

**ORDERED** that the motion is **DENIED**; and it is further

**ORDERED** that the U.S. Department of Commerce's final determination is sustained; and it is further

**ORDERED** that plaintiff's complaint is **DISMISSED**.

It is **SO ORDERED**.

                _____
                HON. TIMOTHY M. REIF, JUDGE

Dated: _____, 2021
   New York, New York